## Pabst Brewing Company, Plaintiff in Error, v. Barney J. Flynn and Albert Flynn, Trading as Flynn Brothers, Defendants in Error.

### Gen. No. 17,794.

1. FORCIBLE ENTRY AND DETAINER—*only recognized lessees need be made defendants.* In an action in forcible detainer, the true issue is as to whether defendants were the lessees, and evidence concerning the interest of a third party in the business on the leased premises is relevant only as plaintiff's knowledge of such interest is shown, together with conduct of plaintiff evidencing recognition of such party as tenant.

2. FORCIBLE ENTRY AND DETAINER—*finding—against weight of evidence.* In action in forcible detainer, a finding for defendants on the ground that a third party was the actual lessee *held* manifestly against the weight of the evidence.

Error to the Municipal Court of Chicago; the Hon. PERRY L. PERSONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Reversed and remanded. Opinion filed February 13, 1913.

LACKNER, BUTZ & MILLER, for plaintiff in error.

MABIE & CONKEY, for defendants in error.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff in error, Pabst Brewing Company, hereinafter called plaintiff, filed a complaint in the Municipal Court in forcible detainer, alleging that plaintiff was entitled to possession of the store and basement of the building No. 174 North State street, Chicago, and that Barney Flynn and Albert Flynn, co-partners as Flynn Brothers, were unlawfully withholding possession thereof from plaintiff. Defendants entered their appearance, and the case was tried by the court without a jury. The judgment was against the plaintiff, and plaintiff asks this court to reverse the judgment on the

ground that it is against the legal effect of the evidence.

Plaintiff's claim is that the defendants were its lessees, and upon their failure to pay rent and the service of the statutory five days' notice it was entitled to possession of the premises. The sole defense is the claim that the defendants, Barney and Albert Flynn, were not the lessees, but that the lessee was another brother, namely, Richard A. Flynn, who was not a party to the suit.

Upon the trial plaintiff introduced evidence tending to show that it had a lease of the premises in question from the Laflin estate, expiring April 30, 1911, at a monthly rental of $375; that in the early part of June, 1910, Barney Flynn, one of the defendants, called up the plaintiff on the telephone and had a talk with one of its representatives in regard to renting the place. In pursuance of this conversation an agent of plaintiff called on Barney Flynn at a saloon which he was conducting at 43 River street, and went with him to the premises No. 174 North State street. Barney inquired as to the rent, and being told that it was $375 a month said that it was too high, and was then advised by the agent to go to the office of plaintiff concerning the matter. On June 10th or 11th Barney Flynn and Albert Flynn, the defendants, called at the office of plaintiff and had a conversation with one of its representatives, in the course of which Barney said that they had come with reference to making a deal for the place at 174 North State street. After some negotiations it was proposed to rent the place up to May 1, 1911, for $300 a month, which was agreed to by the defendants. No written lease was made. Albert Flynn paid the money to cover the first month's rent and received a receipt for the same, and also the keys of the place. Barney Flynn thereupon requested that the brewery immediately send beer down to the premises, and thereupon a beer-book was made out in the name of Flynn Brothers and delivered to the defendants. Thereafter a saloon

was conducted in the premises under the name of "Flynn's Buffet." Barney Flynn was in the saloon from time to time, but never took any active part in the running of the business. Albert Flynn was there every day and ran the business.

In March, 1911, a representative of the plaintiff saw Albert Flynn on the premises and told him that the lease of the plaintiff from the owner ran out on May 1, 1911, and that the plaintiff would not renew the same unless the Flynns agreed to pay $375 per month from May 1, 1911. In April, 1911, Barney and Albert Flynn went to the office of the plaintiff and had a conversation with its representatives. They were told that the plaintiff would not renew the lease unless they would agree to pay $375 per month from May 1, 1911. Defendants agreed to this and plaintiff renewed its lease with the owner. No part of the rent for the months of May or June, 1911, was paid, and the five days' notice reciting that the tenancy would terminate unless the rent was paid having been served on Albert Flynn, and the rent not being paid thereafter, this suit in forcible detainer was commenced.

To support the claim of defendants that Richard A. Flynn was the tenant, Barney Flynn testified that Richard was present when he first went with the agent of plaintiff to visit the premises. This is denied by the agent, who testifies that he never saw Richard in connection with any negotiations for the place. Albert Flynn does not deny that he went with Barney to examine the premises. Barney Flynn also testifies that when he called up the plaintiff by phone he then informed them that he wished to rent the place for a brother, whose name was Richard. This is denied by the representative of plaintiff who talked over the telephone, and this representative testified that he never heard of Richard until after the suit was commenced. Barney also testifies that he took Richard to the brewery at one time but did not see the party they were after and then left.

The license to the place was in the name of one Rossini, apparently an employee of the plaintiff. The receipt for the government license ran to Richard A. Flynn. There were also introduced in evidence nine checks, signed by Richard A. Flynn and payable to plaintiff, showing payments on account of rent for said premises between the period from January 1, 1911, and April 30, 1911. No checks showing payments prior to that time were produced. There was also offered in evidence a letter signed by Albert J. Flynn on a letterhead reading, ''Flynn's Buffet, Al. J. Flynn, Mgr.'' It was denied that plaintiff ever received a copy of the letter. There was also introduced in evidence a card bearing the words ''Flynn's Buffet,'' and Albert swore that a duplicate of such card had been sent to plaintiff, but its receipt was denied. There was also other evidence tending to show that Richard Flynn was interested financially in the business, but no evidence that plaintiff had knowledge of such interest, if any. Richard Flynn did not appear as a witness, and it appears that he has been an invalid for a number of years past.

While the finding of the trial court should be given great weight, especially where there is, as here, conflicting testimony, yet, where, after due consideration, we are convinced that the finding of the trial court was manifestly against the weight of the evidence, it is our duty to reverse the judgment and remand the cause for a new trial. We are inclined to believe, from a consideration of the record before us, that the trial court made its finding upon the assumption that the sole issue was whether Richard A. Flynn had in fact an interest in the business. The true issue was as to whether Barney and Albert Flynn were the lessees. The evidence concerning the interest of Richard in the business was relevant only as plaintiff's knowledge of such interest could be shown, together with some conduct on its part evidencing recognition by plaintiff of Richard as a tenant.

It seems clear that the leasing in the first instance was to Barney and Albert Flynn, and while it may be true that Richard Flynn subsequently acquired an interest in the business or may have been financing it, still the negotiations for the lease were carried on and completed without any knowledge on the part of plaintiff concerning any other parties in the matter save the defendants.

Holding as we do, that the finding of the trial court was manifestly against the weight of the evidence, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*